# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

MICHAEL FOLEY,

    Plaintiff,

v.

LOREA AROSTEGUI, *et al.*,

    Defendants.

Case No. 2:14-cv-00094-RFB-NJK

**OPINION & ORDER**

Defendants' Motion for Summary Judgment

(ECF No. 67)

## I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 67. For the reasons stated below, the motion is granted in part and denied in part.

## II. PROCEDURAL BACKGROUND

On March 10, 2014, Plaintiff Michael Foley filed a civil rights lawsuit against Clark County and Lorea Arostegui, Georgina Stuart, Deborah Croshaw, Lisa Reese, and Lisa Ruiz-Lee, all of whom are Clark County Family Services employees. ECF No. 5. 2. Plaintiff alleged the following causes of action: (1) First Amendment claim regarding the right to petition the government for redress of grievances; (2) Fourth Amendment claim arising from an unlawful

search and seizure; (3) Due Process and Equal Protection claims under the Fifth and Fourteenth Amendments; (4) Conspiracy to Violate the Right to Life, Liberty, Property, Due Process and Equal Protection of the Laws; and (5) Intentional Infliction of Emotional Distress. Defendants filed a Motion to Dismiss the Amended Complaint on January 20, 2014. ECF No. 28. At a hearing September 21, 2015, the Court dismissed all of Plaintiff's claims without prejudice, with the exception of the Due Process and First Amendment retaliation claims. ECF No. 42. At a hearing on August 24, 2016, the Court ordered Plaintiff to file his Second Amended Complaint, which was filed on September 2, 2016. ECF No. 62. The Second Amended Complaint includes all of the claims brought in the First Amended Complaint. Id. Defendants filed the instant Motion for Summary Judgment on January 3, 2017. ECF No. 67. Plaintiff filed a Response and a Motion for Pro Bono Counsel on January 24, 2017. ECF Nos. 69, 70. Defendants filed a Reply on February 3, 2017. ECF No. 71.

**III.    LEGAL STANDARD**

    **A. Motion for Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

When a litigant is pro se, "we must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004). The Ninth Circuit has held that a verified complaint may serve as an opposing affidavit under Rule 56. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). To function as an opposing affidavit, the verified complaint must be based on personal knowledge and set forth specific facts admissible in evidence. Id. The allegations cannot be "based purely on [a litigant's] belief." Id.

**IV. UNDISPUTED FACTS**

As a preliminary matter, the Court notes that the Defendants failed to include an authenticating declaration with their Motion for Summary Judgment. They included an authenticating declaration with their Reply brief, however, and so the Court will consider the exhibits submitted with their Motion for Summary Judgment. Additionally, Plaintiff's Response declines to provide a statement of facts. However, the Court considers allegations in pleadings of which the pro se plaintiff would have personal knowledge. Jones, 393 F.3d at 923. Based on the record, the Court finds the following relevant facts to be undisputed.

On November 4, 2011, Plaintiff filed a civil rights suit naming his ex-wife, Patricia Foley, and Defendant Georgina Stuart as defendants, among others. Patricia Foley was served on

December 11, 2011 and answered on January 12, 2012. Defendant Stuart was served on January 31, 2012. On January 23, 2012, Defendant Arostegui opened an investigation into possible mental abuse of Plaintiff's daughter, TMF.

On March 20, 2012, Defendants sent a letter to Plaintiff's last known address stating the following:

> On January 23, 2012, the Clark County Department of Family Services, Child Protective Services, received a report alleging Mental Injury of [TMF]. Based upon the Division's investigation of the report, it has been determined there is credible evidence that Mental Injury as defined in NRS 432.B has occurred and has been substantiated.
> Pursuant to NRS 432.B.310, the Division is required to submit identifying data to the State Central Registry for each investigation substantiated for abuse or neglect of a child.
> If you have any questions about your case, please contact me at [*number redacted*]
> Attached is the process you must follow in order to appeal the child maltreatment finding.

ECF No. 67-A. The letter was signed by Defendant Arostegui as a case manager in the Child Protective Services Division and included an attachment explaining the steps to take in order to pursue an Agency Appeal and/or a Fair Hearing. The attachment indicates that "[t]he purpose of these hearings <u>is not to re-investigate the allegations</u>, but to ensure the appropriateness of substantiated decision." Id. (emphasis in original).

Defendants do not have any record of a response to the letter. In August 2012, Plaintiff "discovered that the defendants' abuse investigation continued and was closed in or about March 2012 as 'substantiated,' and that his name was entered into the Registry." Plaintiff did not attempt to appeal for several years. Defendant Clark County conducted a search to locate Plaintiff's last known address and again contacted Plaintiff by letters, dated October 7, 2015, and October 28, 2015, notifying him that it had been determined that there is credible evidence of mental injury, and providing him with information as to how to "appeal the child maltreatment finding."

- 4 -

Defendants have no records of responses to these letters.

Plaintiff "has been substantially hindered and disabled from applying for jobs and positions that he is capable of having, but would be surely denied due to the fact that his name would be found by any prospective employer in the registry." Plaintiff also has been "chilled" from seeking reemployment with his former employer, Cox Communications, "because they conduct comprehensive background checks."

## V. DISCUSSION

### A. Due Process Violation

#### *1. Legal Standard*

Whether a law amounts to a violation of procedural due process rights requires a two-step inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

##### *i. Protected Right*

The Fourteenth Amendment protects against "the deprivation of property or liberty without procedural due process." Brady v. Gebbie, 859 F.2d 1543, 1547-48 (9th Cir. 1988). The Supreme Court has held that "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). The Ninth Circuit applies a "stigma plus" test when deciding whether a protected liberty interest exists. "While stigma alone is inadequate to affect a liberty interest, stigma plus an alteration in legal status can encroach on a cognizable liberty interest." Am. Civil Liberties Union of Nevada v. Masto, 670 F.3d 1046, 1058 (9th Cir.

2012). For example, in Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997), the Ninth Circuit found that inmates have a protected liberty interest at stake in the determination of their status as sex offenders, which stems from the stigmatizing consequences of being labeled a sex offender, in addition to "the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility." Id.

In the case of being listed in a child abuse registry, the Ninth Circuit has held that such a classification is "unquestionably stigmatizing." "We have observed that there is '[n]o doubt ... that being falsely named as a suspected child abuser on an official government index is defamatory.'…The horror deepens when such abuse occurs at the hands of the parents, who have an obligation to protect their children." Humphries v. Cnty. of Los Angeles, 554 F.3d 1170, 1186 (9th Cir. 2009), as amended (Jan. 30, 2009), rev'd and remanded sub nom. Los Angeles Cnty., Cal. v. Humphries, 562 U.S. 29 (2010) (internal citation omitted). While the Supreme Court later reversed the Ninth Circuit's decision regarding an aspect of the Monell claim, the Circuit's language regarding the registry remains. See Los Angeles Cnty., Cal. v. Humphries, 562 U.S. 29, 39 (2010). In Humphries, the Ninth Circuit found that the Plaintiff had satisfied the "stigma-plus" test by alleging that, beyond the stigma of being labeled a child abuser, the statute also implicated his legal status by: (1) mandating that licensing agencies search the registry and conduct an additional investigation prior to granting a number of rights and benefits, and (2) making information in the registry available to other identified agencies including persons making pre-employment investigations and out-of-state agencies making foster care or adoptive decisions. Humphries, 554 F.3d at 1188.

> ii. *What Process is Due*

Once a protected property or liberty interest has been established, the process that must be followed before that interest can be taken away depends on three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews v. Eldridge, 424 U.S. 319, 335 (1976). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Id. at 335. "Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." Samson v. City of Bainbridge Island, 683 F.3d 1051, 1059 (9th Cir. 2012) (internal citations omitted). "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking. Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." Zinermon v. Burch, 494 U.S. 113, 132 (1990) (internal citations omitted).

### *2. Discussion*

Plaintiff alleges in his Second Amended Complaint that "by unlawfully seizing and interrogating Plaintiff's children, and conspiring to do the same as Federal and State Actors, under false pretenses… and taking adverse action against the Plaintiff without providing adequate notice or an opportunity to be heard or deny consent, the defendants … violated Plaintiff's procedural due process rights." Thus, Plaintiff's Second Amended Complaint is best construed as asserting

two due process claims: (1) based upon the seizure and examination or interrogation of his children, and (2) based on his entry into the abuse registry.

In the oral ruling on the Motion to Dismiss, the Court dismissed the Fourth and Fourteenth Amendment claims based on the "seizure" of Plaintiff's children. The Court affirms and clarifies that ruling. Plaintiff's Complaint alleges that during the school interrogation, Defendant Arostegui noted that TMF lives with her mother, who has "full custody." No pleading or admissible fact indicates that Foley had custody over his children at the time of the relevant "seizures." The Court further reiterates that Plaintiff has presented no admissible facts beyond those in the pleadings of which he would have personal knowledge. Plaintiff in effect asks that the Court find some evidence for the claim based on the non-specific hearsay allegations that his children, over whom he may not have had custody—according to his own allegation in the SAC—were seized, interrogated, and examined. The Court finds that the Plaintiff has failed to raise a genuine dispute of material fact with respect to the first due process claim.

Regarding the claim based upon his entry into the registry, Plaintiff's statements raise a genuine dispute. Plaintiff's allegations implicate a liberty interest similar to the one articulated by the Ninth Circuit in <u>Humphries</u>. Besides the potential stigma of being labeled a child abuser, the statute in this case similarly makes the information on the registry available in limited circumstances, including for background checks of prospective employees (with the written authorization of the subject of the background investigation), to obtain a license for operating a childcare facility, and to provide the information to "an employee or contractor of any other state or local governmental agency responsible for the welfare of children who requests access to the information and who demonstrates to the satisfaction of the Administrator a bona fide need to access the information." NRS 432.100(3). The Plaintiff has alleged that his listing on the registry

has prevented him from seeking certain employment opportunities, including seeking reemployment with his former employer, Cox Communications, because he knows that he would be required to authorize a comprehensive background check in order to obtain employment. Thus, the Court finds that being listed on the statewide child abuse registry implicates a liberty interest that satisfies the stigma-plus test.

Having established that being listed on the registry implicates a protected liberty interest, the question is how much process is due before a reporting agency can list an individual on the registry. The case at hand raises procedural issues beyond those considered by the Ninth Circuit in the past. In Humphries, the Ninth Circuit held that the statewide child abuse registry statute violated procedural due process because it did not include a procedure by which an individual could challenge their listing on the registry. Humphries, 554 F.3d at 1176. That is not the case here. The Nevada statute provides a mechanism for appeal that the Defendants informed Plaintiff of in the same letter in which they informed him that they had made the determination to add him to the registry. The Court does not find that the Plaintiff has raised a genuine dispute regarding the timeliness of the Defendants providing him with notice of his right to appeal.

The question here, which the Ninth Circuit did not address in Humphries, is whether the Defendants should have provided Plaintiff with notice and the opportunity to be heard after concluding that the allegations against him were substantiated, but before adding him to the registry. "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." Zinermon, 484 U.S. at 132. Where there is a protected liberty interest at stake, the State is required to hold a predeprivation hearing unless it would be "unduly burdensome." Id. The Defendants have not provided any reasons in their pleadings or motions why
- 9 -

providing a predeprivation proceeding in this case would be unduly burdensome. Defendants only argument on this matter is that "Plaintiff has had multiple opportunities and several years to avail himself and appeal his name being placed in the Registry. In fact, Plaintiff does not deny that he ever requested a hearing before a Hearing Officer, as was his right under state law procedures. Having failed to avail himself of the available procedures that may have rectified the alleged deprivation, he cannot now claim to have been deprived of the process that he chose not to seek." This argument regarding Plaintiff's decision not to avail himself of postdeprivation remedies, while potentially relevant to the question of damages, is irrelevant to the question of whether the Defendants should have offered a *predeprivation* hearing. The law is clear that the State must provide a predeprivation remedy where feasible, regardless of the ability to cure a deprivation after the fact. Therefore, the Court finds that Plaintiff has raised a genuine question of material fact regarding whether it would have been feasible for the Defendants to offer him notice and the opportunity to be heard before adding his name to the registry.

The Court finds, however, that Plaintiff has not provided sufficient evidence of personal participation by the individual Defendants to raise a genuine question of material fact. Therefore, the Court will grant summary judgment on the due process claim against the individual Defendants.

The Court finds that there is a genuine dispute regarding the liability of Defendant Clark County, however. "When an individual sues a local government for violation of a constitutional right, the municipality is liable if the individual can establish that the local government 'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered.'" Galen v. County of L.A., 477 F.3d 652, 667 (9th Cir. 2007) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694–95 (1978)). When it comes to a local

municipality implementing a statewide statute, the question of Monell liability becomes more difficult. This is because "municipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

The Ninth Circuit held that Monell liability was possible based on similar facts in Humphries, however. In that case, the local municipality was similarly tasked with implementing a statewide child abuse registry statute that did not require sufficient due process be given to the accused. In considering whether the local municipality could be held liable for implementing the state statute, the Ninth Circuit held, "[The state-wide child abuse registry statute] itself did not create a sufficient procedure by which the Humphries could challenge their listing on the Index. Nothing in [the statute], however, prevented the LASD from creating an independent procedure that would allow the Humphries to challenge their listing on the Index. By failing to do so, it is possible that the LASD adopted a custom and policy that violated the Humphries' constitutional rights." Humphries, 554 F.3d at 1202. The Ninth Circuit then reversed and remanded to the district court to determine the county's liability under Monell. Id. The issue in this case is very similar. Although the statewide statute does not mandate any predeprivation hearing, nothing in the statute prevents local reporting agencies from implementing those procedures themselves. Therefore, there is a genuine dispute concerning whether, by failing to implement its own procedures, Defendant Clark County made "a deliberate choice to follow a course of action… from among various alternatives." Pembaur, 475 U.S. at 483. Because of this, the Court will not grant summary judgment to Defendant Clark County on the due process claim.

**B. First Amendment Retaliation Claim**

### *i. Legal Standard*

A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986). To bring a First Amendment retaliation claim, the plaintiff must allege that "(1) [he] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 867 (9th Cir. 2016). If the plaintiff establishes the elements of a retaliation claim, "the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct… the defendants must show more than that they 'could have' punished the plaintiffs in the absence of the protected speech; instead, 'the burden is on the defendants to show' through evidence that they 'would have' punished the plaintiffs under those circumstances." Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006) (internal quotations and citations omitted).

### *ii. Discussion*

The Court finds that the timing of the filing of Plaintiff's civil rights lawsuit and the Defendant's subsequent investigation and listing of Plaintiff on the registry is sufficient to establish a genuine dispute regarding Defendants' motive in pursuing the investigation against him. Plaintiff served his lawsuit on his ex-wife, Patricia Foley, in December of 2011. Plaintiff alleges that Foley informed Defendant Stuart that she was named in the lawsuit in January of 2012, but as he does not have personal knowledge of this fact, the Court will not consider it.

However, the Defendants do not deny that Defendant Stuart was served on January 31, 2012, that they opened their investigation of Plaintiff in January of 2012, or that they had substantiated the allegations of abuse and forwarded Plaintiff's information to the registry by March 20, 2012. "A plaintiff may establish motive using direct or circumstantial evidence…In cases involving First Amendment retaliation in the employment context, we have held that a plaintiff may rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that the defendant's purported reasons for its conduct are pretextual or false." Id. at 980. The same rationale applies here. Even without further evidence, the close proximity of these events is sufficient to establish "a nexus between the defendant's actions and an intent to chill speech." Ariz. Students' Ass'n, 824 F.3d at 867.

The Defendants could have rebutted this presumption by submitting evidence indicating that they would have decided to pursue this investigation and substantiate these allegations in the absence of Plaintiff filing the civil rights lawsuit. The Defendants declined to submit such evidence, however. Instead they argue, "Plaintiff has not made a case out of retaliation because he has not shown that the impairments he suffered were not imposed independently under legitimate non-retaliatory rationales." This assertion misstates the burden at this stage in the analysis. Once Plaintiff established a nexus between the Defendants' actions and the intent to chill speech, the burden was on the Defendants to prove that they would have come to the same conclusions otherwise. Because the Defendants have submitted no such evidence, the Court finds a material dispute with regard to the issue of retaliatory motivation.

Plaintiff alleges in his Second Amended Complaint that each of the individual Defendants "knowingly and/or recklessly engag[ed], endors[ed] and allow[ed] a false and unwarranted investigation to be conducted and carried out against the Plaintiff, knowing that said

investigation was at the request and behest of Defendant Georgina Stuart, and in retaliation against the Plaintiff for having petitioned the government (the U.S. District Court) for redress of his grievances against County government defendant Stuart in the civil action <u>Michael Foley v. Michelle Pont et al</u>, Case No. 2:11-cv-01768-JCM-(VCF)." However, Plaintiff does not have personal knowledge of the actions or motives of most of the individual Defendants sufficient to establish a material dispute regarding their personal participation in the alleged retaliation.

The only individual Defendant that Plaintiff has pled personal knowledge of is Defendant Arostegui. Plaintiff alleges in his Second Amended Complaint that Defendant Arostegui contacted him in January of 2012 and "attempted to persuade him to implicate himself, and admit to their allegations that he 'mentally injured' his daughter TMF." He further alleges that he "informed Arostegui that he was proceeding with a civil rights complaint against her fellow agent/investigator/defendant Georgina Stuart, and asked whether she was conducting the investigation in retaliation for his filing of the Federal (Pont) lawsuit," which Defendant Arostegui did not deny. The Court will consider these allegations, as Plaintiff would have personal knowledge of them. Additionally, Defendant Arostegui signed the letter, submitted and authenticated by the Defendants, informing Plaintiff of the substantiation of the allegations against him and the decision to forward his information to the registry, along with his right to appeal that decision. These facts, in combination with the potentially suspicious timing of the investigation, are sufficient to establish a material dispute regarding Defendant Arostegui's involvement in the alleged retaliation. The Court will grant summary judgment on the First Amendment retaliation claim against all other individual Defendants. Additionally, Plaintiff has submitted no evidence based on personal knowledge to establish a policy or custom of retaliation that would make Defendant Clark County liable under any of the four <u>Monell</u> theories, and so

the Court will grant summary judgment to Defendant Clark County on the First Amendment retaliation claim.

### C. Previously Dismissed Claims

The Court previously dismissed Plaintiff's other claims for failure to state a claim, but allowed Plaintiff leave to amend his complaint with additional information. Plaintiff included these claims again in his Second Amended Complaint. Having reviewed the pleadings, the Court finds that the Plaintiff has failed to establish any of the previously dismissed claims, and so the Court will dismiss them with prejudice at this time.

### VI. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 67) is GRANTED IN PART and DENIED IN PART as follows:

- Summary judgment is denied as to Plaintiff's due process claim against Defendant Clark County.
- Summary judgment is denied as to Plaintiff's First Amendment retaliation claim against Defendant Arostegui.
- Summary judgment is granted for the defendants as to every other claim.

**IT IS FURTHER ORDERED** that a status conference is set for February 12, 2018 at 3:00 p.m. in Courtroom 7D to review this Order and discuss a potential trial.

DATED: January 31, 2018.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**