UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL FOLEY, | Case No. 2:14-cv-00094-RFB-NJK |
| Plaintiff, | **ORDER** |
| v. | |
| LOREA AROSTEGUI ET AL., | |
| Defendants. | |

Before the Court is remaining Defendants Lorea Arostegui and Clark County, Nevada (collectively "Defendants")'s Motion for Sanctions (ECF No. 196) against *pro se* Plaintiff Michael Foley, Defendants' Motion for Summary Judgement (ECF No. 198), and Plaintiff's Motion for Transfer of Documents. For the reasons stated below, Defendants' motions are granted, and Plaintiff's motion is denied.

I. PROCEEDURAL BACKGROUND

Plaintiff filed an Amended Complaint in this matter on April 10, 2014, and Defendants filed a Motion to Dismiss the Amended Complaint on January 20, 2015. ECF Nos. 6, 28. A hearing on the motion was held September 21, 2015. The Court dismissed all of Plaintiff's claims except for Plaintiff's Due Process claim. ECF No. 42.

Plaintiff filed a Second Amended Complaint on September 2, 2016. ECF No. 62. Defendants filed a Motion for Summary Judgment on January 1, 2017. ECF No. 67. The Court denied that motion as to Plaintiff's due process claim against Defendant Clark County and Plaintiff's First Amendment retaliation claim against Defendant Arostegui and granted the motion for the Defendants as to every other claim. ECF No. 78.

On January 25, 2019, Plaintiff filed an Emergency Motion to Reopen Discovery on January 24, 2019. ECF No. 117. The Court granted this motion on January 29, 2019. ECF No. 123. The Court also granted a stipulation to Reopen Discovery and issued a stipulated protective order on March 20, 2019. ECF No. 131, 132. On May 16, 2019, Defendants filed a Motion to Compel and on May 17, 2019, an Emergency Motion to Compel. ECF Nos. 139, 140.

On May 30, 2019, The Court granted Plaintiff's Motion to Withdraw as Counsel (ECF No. 134). ECF No. 141. The Court granted in part and denied in part the Emergency Motion to Compel and denied the Motion to Compel as moot. Defendants were further ordered to re-send remaining discovery requests directly to Plaintiff via email by May 30, 2019, and Plaintiff was ordered to respond by June 13, 2019. ECF No. 141. Plaintiff filed a Notice of Appearance on July 1, 2019. ECF No. 147.

Defendants filed a Motion for Terminating Sanctions on July 2, 2019. ECF No. 149. Plaintiff responded on July 16, 2019, ECF No. 154, and Defendants replied on July 23, 2019, ECF No. 157. The Court stayed the case pending resolution of the sanctions motion on August 5, 2019. ECF No. 160. On September 25, 2019, the Court issued an order Granting Defendants' Motion for Terminating Sanctions (ECF No. 149) and the next day, entered judgement in the favor of Defendants. ECF Nos. 161, 162.

On October 4, 2019, Plaintiff's counsel moved to withdraw. On October 10, 2019, Defendants filed a Motion for Attorney's Fees and a Bill of Cost, pursuant to the Court's September 25 Order. ECF Nos. 164, 165. Plaintiff filed a Motion for Reconsideration. ECF No. 166. The Motion for Attorney's Fees, Bill of Cost, and Motion for Reconsideration were fully briefed. ECF Nos. 167-70, 172. On January 13, 2020, the Clerk of Court filed Costs Taxed and a Clerk's Memorandum regarding the taxation of costs. ECF Nos. 173, 174. Plaintiff filed a Motion for Re-Taxation of Costs, which was fully briefed by the Parties. ECF Nos. 175-77. On September 23, 2020, the Court issued an Order granting withdrawal for Plaintiff's counsel, granting the Motion for Attorney's Fees, awarding Defendants $2,069.50 in attorneys' fees and $3,875.41 in costs, and denying the Plaintiff's Motion for Re-Taxation. ECF No. 178. Judgement on Attorney's Fees in favor of Defendants against Plaintiff was entered on September 23, 2020. ECF No. 179.

On October 22, 2020, Plaintiff filed a Notice of Appeal regarding various orders, including the Order granting terminating sanctions (ECF No. 161). ECF No. 182. On August 31, 2022, the Mandate of the United States Court of Appeals for the Ninth Circuit issued, reversing and remanding the case to the Court. ECF No. 190. On December 7, 2022, the Court issued an Order on the Mandate and set a status conference. ECF No. 192.

The Court conducted a status conference on January 20, 2023. ECF No. 195. The Court reopened discovery for sixty days. Id. On February 2, 2023, Defendants filed a Motion for Sanctions. ECF No. 196. Plaintiff filed a Fourth Motion for Appointment of Counsel on February 7, 2023. ECF No. 197. On February 7, 2023, Defendants filed a Motion for Summary Judgment. ECF No. 198. These three motions (ECF Nos. 196, 97, 98) were fully briefed. ECF Nos. 200-04, 06. On March 19, 2023, Plaintiff filed a Motion for Transfer of Documents. ECF No. 205.

On August 18, this Court held a hearing concerning the Motion for Sanctions, the Motion for Appointment of Counsel, and the Motion for Summary Judgment (ECF Nos. 196. 97, 98). ECF No. 208. The Court denied the Motion for Appointment of Counsel, finding there were not extraordinary circumstances present to warrant appointment, and took the remaining motions under submission. Id.

The Court's order follows.

II.     **FACTUAL BACKGROUND**

    A. Undisputed Facts Regarding Summary Judgment

The Court finds the following facts are undisputed.

The State of Nevada operates the Nevada Child and Adolescent Needs and Strengths ("CANS") tool, which includes the names of people who have been determined to have substantiated allegations of child abuse. The Clark County Department of Family Services ("DFS") reports information to CANS. Under Nevada law, any reports of child abuse from a mandatory reporter must be included in CANS as well as the results of any investigation. The CANS database is not public and must be searched by a user to find a person on the registry.

DFS begins an investigation when a call is received on a hotline. The hotline worker takes

a report and recommends whether it should be investigated. The hotline supervisor reviews that report. If the case moves forward to investigation, it is assigned to a geographic zone by DFS. The investigation supervisor of that zone reviews the report and assigns an investigator from their zone who investigates the report. That investigator returns with a recommendation and findings. The investigation supervisor then can close or continue the case. If a case is closed and the allegation found to be substantiated, the supervisor signs off on the report and conveys the findings to the state authorities responsible for CANS. To substantiate a case, DFS relies on official definitions of the alleged abuse. Substantiation is not the same as entry into CANS.

In 2008, DFS carried out an investigation of Plaintiff Michael Foley. On November 4, 2011, Plaintiff initiated a lawsuit ("first lawsuit") regarding claims of an alleged conspiracy to interfere with his custody over his children arising out of the 2008 DFS investigation. Among those sued was a DFS worker named Georgina Stuart. The 2008 DFS investigation did not result in a substantiated finding.

On January 23, 2012, the Clark County Department of Family Services ("DFS") received a call on the DFS hotline reporting potential child abuse. The same day, Defendant Arostegui opened an investigation into possible mental abuse of Plaintiff's daughter TMF. Arostegui was joined by her colleague Deborah Stewart during her investigation, both worked in DFS' western zone. At the relevant times, Georgia Stuart and Deborah Stewart were two separate individuals employed in separate areas of DFS. Georgina Stuart worked in DFS' southern zone.

During the course of the investigation, Arostegui conducted interviews and reviewed court, school, and medical records. As part of the process, Arostegui spoke with Plaintiff by phone on January 26, 2012. The conversation lasted nearly 15 minutes and, during that conversation Arostegui told Plaintiff of their investigation and asked to speak. Plaintiff asked if he would be provided with a lawyer and Arostegui responded that her department does not provide lawyers. Plaintiff asked if the investigation was retaliation for his 2011 lawsuit, stated he would retain counsel before meeting with Arostegui, and asked her to send a letter to his home. On January 30, 2012, Arostegui called Plaintiff to confirm his address. Plaintiff stated he did not reside at 312 Butterworth, Henderson, Nevada. Plaintiff said his attorney would contact Arostegui with a correct

address.

Plaintiff testified at his deposition that he was living in several houses during 2012 and that he did not reside at the Butterworth address during that time. Plaintiff also testified that "I told her she could speak with my attorney . . . I knew that there was no proof . . . [s]o I did not want to engage. So I told her that if, you know, she wants to communicate with me that she can do it through my attorney." Plaintiff later clarified that he "had not retained an attorney because . . . no action was taken against me in January 2012, at least not to my knowledge." Defendants were not contacted by any lawyer representing Plaintiff nor were they furnished with an updated address. On March 16 and 20, 2012, Arostegui advised closing the case as substantiated.

On March 20, 2012, Arostegui's supervisor Deborah Croshaw reviewed the case, detailed findings, and recommended closing the case as substantiated. Shortly after, also on March 20, 2012, Defendants sent a letter to Plaintiff stating in full:

> Dear Mr. Foley:
>
> On January 23, 2012, the Clark County Department of Family Services, Child Protective Services, received a report alleging Mental Injury of [TMF]. Based upon the Division's investigation of the report, it has been determined there is credible evidence that Mental Injury as defined in NRS 432.B has occurred and has been substantiated.
>
> Pursuant to NRS 432.B.310, the Division is required to submit identifying data to the State Central Registry for each investigation substantiated for abuse or neglect of a child.
>
> If you have any questions about your case, please contact me at [number redacted].
>
> Attached is the process you must follow in order to appeal the child maltreatment finding.
>
> Sincerely,
> Lorea Arostegui

Attached to the letter are five pages detailing the appeal process. The attachment explains *inter alia* that: there is a right to both an agency appeal within DFS and an opportunity for the agency determination to be reviewed by an independent hearing officer; that the hearing is designed to give "due process, which is the right to receive notice of an adverse determination against you and

give you an opportunity to respon[d] in an orderly proceeding;" that the appeal or the hearing may involve a review of the record to ensure the appropriateness of a substantiation decision; that a form provided in the attachment should be sent to DFS electronically, by fax, or by USPS mail within 15 days of the certified mail receipt attached to the letter; that Plaintiff could submit any documentation in support of his appeal at any time prior to the administrative review's convening; instructions on how to request an independent hearing to appeal the final agency determination, and that Plaintiff has the right to be represented by an attorney during the independent hearing. This letter (hereinafter "Substantiation Letter") was sent to 312 Butterworth, Henderson, NV 9025, via United States Postal Service ("USPS") certified first class mail. It was accepted by USPS on March 22 and arrived on March 24. Notice was left. On March 26, 2012, the letter was listed as delivered.

Plaintiff did not respond to the Substantiation Letter. On August 12, 2012, Plaintiff received court documents as part of a separate lawsuit that included an exhibit stating that Plaintiff was referred to CANS. Plaintiff did not seek to appeal at that time. Plaintiff did not apply for employment after learning he was placed on CANS since he fears the jobs are going to reject him. He has similarly been dissuaded from pursuing volunteer positions or education. Plaintiff has not been refused employment based on his CANS status.

In October 2015, after the instant suit was filed, Defendant Clark County conducted a search to locate Plaintiff's last known addresses. On October 7, 2015, DFS sent a letter (hereinafter "October 7th Letter") by certified USPS mail to Plaintiff at 208 South Stephanie Street, B-191, Henderson, NV 89012. The letter was listed as delivered on October 10, 2015. The October 7th Letter contained substantially the same content as the Substantiation Letter, but also included on the first page: "DFS has created an Appeals Unit to process appeals . . . [i]f you wish to appeal this matter, you must submit a written request to DFS within 15 days of the receipt of this certified mail." (emphasis original).

On October 28, 2015, DFS sent a letter (hereinafter "October 28th Letter") via certified USPS mail to the same address. The letter was listed as delivered on October 31, 2015. The October 28th Letter provided the same notification to Plaintiff. Both the October 7th and 28th

- 6 -

Letters contained a phone number and email for the Appeal Unit for Plaintiff to contact regarding any questions. Plaintiff did not respond to either the October 7th or 28th Letter.

### B. Factual Findings Regarding Sanctions

The Court makes the following findings from the record. The Court granted the Parties' stipulation to extend the discovery deadline on March 20, 2019. This stipulation extended the discovery deadline until May 20, 2019. Plaintiff did not respond to Defendants' First Set of Requests for Production and Defendants filed, inter alia, an Emergency Motion to Compel (ECF No. 140). At a hearing on the motion, the Court stated to Plaintiff that he had fourteen days to respond as appropriate to Defendants' Requests for Production and that discovery would close on June 28, 2019. The Court advised Plaintiff that he must respond but that he could notify Defense counsel if his jury duty obligations required a renewed discovery schedule. The Court further warned Plaintiff that if he did not respond and had no legitimate excuse for failure to respond, his claims could be dismissed, and he could be subject to monetary sanctions. Plaintiff acknowledged that he understood this warning. Plaintiff's counsel filed a Notice of Appearance on July 1, 2019. On July 2, 2019, Defendants filed a Motion for Terminating Sanctions, stating Plaintiff had failed to answer the Requests for Production of documents.

## III.  LEGAL STANDARD

### A. Rule 37 Sanctions

"Courts need not tolerate flagrant abuses of the discovery process." Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980). Federal Rule of Civil Procedure 37 provides for a wide range of sanctions for a party's failure to comply with discovery orders. See United States v. Sumitomo Marine & Fire Ins. Co., Ltd., 617 F.2d 1365, 1369 (9th Cir. 1980).

As the pre-trial stage, a district court can impose sanctions for discovery abuses. See Fed. R. Civ. P. 37. Where a party "fails to obey an order to provide or permit discovery," the court may issue an order, *inter alia*, "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]" Fed. R. Civ.

P. 37(b)(2)(A)(ii). Moreover, under Rule 37(c)(1), a party that fails to provide information as required by Rule 26(a) "is not allowed to use that information . . . on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Finally, "[i]nstead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

"Exclusionary orders ensure that a party will not be able to profit from its own failure to comply." Sumitomo, 617 F.2d at 1369 (citing Cine Forty-Second St. Theater Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979)). In addition, "courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided the party on whom they are imposed is, in some sense, at fault. Id. (citing Nat'l Hockey League v. Metropolitan Hockey Club, Inc. (NHL), 427 U.S. 639 (1976) (per curiam) and Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 187 (1958)).

Federal District Courts also retain the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962). This power includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991).

### B. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. Of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### IV. DISCUSSION

#### A. Motion for Sanctions

The Court first addresses Defendants' Motion for Sanctions.

Defendant-Movants argue that Plaintiff should be precluded from demonstrating damages in light of his refusal to comply with the discovery process for disclosures related to damages. Because of the alleged disadvantage in preparing their defense, Defendants ask that any speculative amount of damages requested be stricken and precluded as being provided as evidence in any motion, hearing, or at trial. Defendants further argue that their good faith and Plaintiff's alleged disregard of the rules merit an award of reasonable costs and attorney's fees.

Plaintiff argues that he has litigated in good faith and that the unanswered production was the result of the unexpected loss of counsel. He further argues that his replacement counsel should have been given time to respond to the request before sanctioning. Finally, Plaintiff argues that the prior sanction of dismissal, though later reversed, remains adequate deterrence and no further sanctions are warranted.

Plaintiff's arguments are unavailing; the Court finds exclusionary sanctions are required. Federal Rule of Civil Procedure 26(a)(1)(A)(iii) provides that "a party must, without awaiting a discovery request, provide to the other parties" multiple forms of basic initial disclosures, including "a computation of each category of damages claimed by the disclosing party." Further, the evidence of that computation, unless privileged or protected from disclosure, must be made available for inspection. Id. Such a disclosure must be made within 14 days of the Rule 26(f) conference. Fed. R. Civ. Pro. 26(a)(1)(D).

Here, the Court finds Plaintiff failed to make timely initial disclosures. Despite Plaintiff's non-compliance with the required 26(a) disclosure, Defendants made multiple clear discovery requests for a computation of Plaintiff's damages. Plaintiff had sufficient time, including extensions from Defendants and the Court. This Court admonished Plaintiff that his case could be dismissed if he did not comply with the discovery request and, following remand, reopened discovery so Plaintiff could provide the disclosures. At the hearing on the instant motions and in the briefing, there is no indication that Plaintiff provided a calculation of damages, more than seven years after they were due at the 26(f) conference. In sum, the Court finds Plaintiff failed to satisfy his disclosure obligations under Rule 26(a).

Federal Rule of Civil Procedure 37(c)(1) is clear: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Rule 37(c)(1) is an "automatic sanction." Fed. R. Civ. Pro. 37(c) Advisory Committee's Note on Rules—1993 Amendment; Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). "As the Rule plainly states, litigants can escape the 'harshness' of exclusion only if they prove that the discovery violations were substantially justified or harmless." Merchant v. Corizon Health, Inc., 993 F.3d 733, 740 (9th Cir. 2021) (citing Yeti, 259 F.3d at 1106).

The Court finds that Plaintiff was not substantially justified in failing to meet the discovery deadline. As discussed previously, he was explicitly warned by the Court that failing to respond could result in dismissal, and his prioritization of personal time over his obligation to Defendants and this Court does not qualify as substantial justification.

Further, the automatic nature of the Rule's application does not mean that a district court must exclude evidence that runs afoul of Rule 26(a) or (e). Id. "Rule 37(c)(1) authorizes appropriate sanctions '[i]n addition to or instead of [exclusion].'" Id. (quoting Fed. R. Civ. Pro. 37(c)(1)). The party facing sanctions bears the burden of showing that a sanction other than exclusion is better suited. Id. at 741 ("to require district courts to consider lesser sanctions without a motion 'would collapse the rule's provision of automatic exclusion . . . into an open-ended

1    approach that is divorced from the text of the rule.'") (quoting Venderberg v. Petco Animal
2    Supplies Stores, Inc., 906 F.3d 698, 705 (8th Cir. 2018)).

3        The Court finds that the Plaintiff has not presented an alternative sanction and that plain
4    text of Rule 37(c)(1) compels the Court to exclude the non-disclosed evidence of damages. Further,
5    considering the harm to the Defendants as well as for deterrent effect, the Court finds that the
6    automatic exclusion is warranted regardless. Nevertheless, should this evidence become important
7    at a later stage of proceedings, in light of Plaintiff's *pro se* status—this Court will consider a motion
8    to set aside the exclusion on a showing of good cause.

9        Finally, the Court considers Plaintiff's request for reasonable costs in bringing this motion.
10   "In addition to or instead of" exclusionary sanction, the Court "may order payment of the
11   reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. Pro.
12   37(c)(1)(A). In addition, where a party fails to obey an order to provide or remit discovery, "the
13   court **must** order the disobedient party . . . to pay the reasonable expenses, including attorney's
14   fees, caused by the failure, unless the failure was substantially justified or other circumstances
15   make an award of expenses unjust." Fed. R. Civ. Pro. 37(b)(2)(C) (emphasis added).

16       Defendants argue that fees and costs are warranted regardless of the sanctions imposed on
17   Plaintiff. Plaintiff counters that Defendants did not attempt in good faith to obtain the requested
18   discovery because they filed the instant motion on the same day, they became aware Plaintiff had
19   obtained new counsel. Plaintiff also argues monetary sanctions would be unjust because Plaintiff
20   was a *pro se* plaintiff at the time the request was due, and that Plaintiff's counsel reasonably sought
21   to first familiarize herself with the Court's order prior to responding to the request.

22       The Court finds that Plaintiff was not substantially justified in failing to meet the discovery
23   deadline. He faced a clear court order, was warned by the Court, yet he chose not to comply with
24   the Court's order. The Court further finds that monetary sanctions would not be unjust here. While
25   Plaintiff was *pro se* at the time discovery was due, the request itself was not exceptionally onerous
26   and, again, Plaintiff was aware of the consequences of non-compliance with the Court's order.

27       Accordingly, because the Court has already found exclusionary sanctions to be appropriate
28   and because the Court finds neither substantial justification nor other circumstances that would

make an award of expenses unjust, the Court is compelled by Rule 37(b)(2)(c) to award monetary sanctions.

Finally, the Court finds that a combination of exclusionary sanctions and expenses to be appropriate compared to alternative sanctions. Among the sanctions available to this court, "[i]n ascending order of harshness, the district court may: require the delinquent party or his attorney to pay the reasonable expenses, including attorney's fees, incurred by the innocent party as a result of the failure to obey the order; strike out portions of pleadings; deem certain facts as established for purposes of the action or preclude admission of evidence on designated matters; dismiss all or part of the action; or render a default judgment against the disobedient party." See Sumitomo, 617 F.2d at 169 (describing the list of sanctions permissible under Rule 37(b)). The Court has previously issued orders to no effect on Plaintiff and following remand Plaintiff has continued to fall short of his discovery obligations; thus, some further sanction is required to deter "callous disregard" of discovery obligations by Plaintiff and other litigants. See NHL, 427 U.S. at 643. Exclusionary sanctions paired with reasonable costs are appropriate to address the underlying harm caused, to prevent Plaintiff from profiting from willful discovery violations, and to provide an important deterrent effect. The Defendants will be ordered to submit a motion for such fees and costs with supporting argument and documentation.

### B. Motion for Summary Judgement

The Court next turns to Defendants Motion for Summary Judgement.

    i. Procedural Due Process Claim Against Clark County

Plaintiff's first remaining claim alleges that Defendant Clark County violated his right to procedural due process regarding his entry into the CANS registry. To succeed on his claim Plaintiff must establish both that there was a violation of his due process rights and that Clark County is liable for that violation under Monell v. Dep't of Soc. Servs. 436 U.S. 658, 694–95 (1978). For the reasons below, the Court finds that Plaintiff has failed to establish a constitutional violation as a matter of law.

The Fourteenth Amendment protects against "the deprivation of property or liberty without

procedural due process." Brady v. Gebbie, 859 F.2d 1543, 1547-48 (9th Cir. 1988). To succeed on a procedural due process claim, a plaintiff must show both (1) a protected liberty interest and (2) a deficiency in the process protecting that interest. See Sandin v. Conner, 515 U.S. 472, 487 (1995).

A person's reputation can rise to a cognizable liberty interest. Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). The Ninth Circuit applies a "stigma plus" test to determine whether a protected liberty interest exists. Am. Civil Liberties Union of Nevada v. Masto, 670 F.3d 1046, 1058 (9th Cir. 2012) "While stigma alone is inadequate to affect a liberty interest, stigma plus an alteration in legal status can encroach on a cognizable liberty interest." Id. In the context of child abuse registries, the Ninth Circuit has that "there is '[n]o doubt . . . that being falsely named as a suspected child abuser on an official government index is defamatory." Humphries v. Cnty. of Los Angeles, 554 F.3d 1170, 1186 (9th Cir. 2009), as amended (Jan. 30, 2009), rev'd and remanded on different grounds sub nom. Los Angeles Cnty., Cal. v. Humphries, 562 U.S. 29 (2010) (internal citation omitted). In Humphries, the requisite alteration in legal status was found to be satisfied by (1) mandating that certain licensing agencies search the registry and conduct an additional investigation and (2) making the information in the registry available to certain in-state and out-of-state agencies. Id. at 1188.

Once the stigma plus test is satisfied, a plaintiff still needs to show that the process followed was deficient. Courts consider: (1) whether the private interest will be affected by the official action; (2) the risk of erroneous deprivation through the procedures in place; (3) the probable value of additional or substitute procedural safeguards; and (4) the Government's interest. Matthews v. Eldridge, 424 U.S 319, 335 (1976). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Id. at 335; see also Samson v. City of Bainbridge Island, 683 F.3d 1051, 1059 (9th Cir. 2012) ("Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest.") (internal citations omitted). In situations where a pre-deprivation hearing is unduly burdensome in proportion to the liberty interest at stake, a post-deprivation remedy may still satisfy the requirements of procedural due process. Zinermon v. Burch, 494 U.S. 113, 132 (1990).

Plaintiff argues that Humphries conclusively establishes that his inclusion on the CANS

registry satisfies the stigma plus test. Plaintiff argues that failing to give personal notice in the Substantiation Letter and the long delay before the October Letters arrived are not the prompt notice required by Humphries. Plaintiff further argues that, since he was justified in not meeting with Arostegui without a state-provided attorney, he never had an opportunity to be heard. Finally, Plaintiff argues that DFS are systemically biased against divorced fathers.

Defendants argue that Plaintiff has provided no evidence of a change in legal status, that he has not actually been denied from any positions or opportunities due to his inclusion on CANS. Further, Defendants argue that Plaintiff has provided no evidence to show either a public disclosure or that any entity has even sought to search for his name in CANS. Finally, Defendants argue that the process provided was more than sufficient to rise to the level of prompt notice and some opportunity to be heard demanded by Humphries.

Even assuming *arguendo* that the stigma plus test is satisfied, Plaintiff fails to establish that the process he was provided was insufficient.

The Court finds that there is no dispute that: (1) Plaintiff had an opportunity to meet with the agency finder-of-fact and declined to do so; (2) Plaintiff was aware of the investigation against him and unambiguously declined to provide his updated address despite being asked to do so; (3) Plaintiff was sent the Substantiation Letter at his last known address by certified mail which included a detailed description of the appeals process; (4) beyond any informal hearing, Plaintiff was provided with both an agency appeal and a hearing before an independent hearing officer; (5) Plaintiff failed to take advantage of two opportunities in 2015 to appeal the decision; and (6) Plaintiff never appealed.

The Court finds that Plaintiff was provided with sufficient process. Humphries explained that "at the very least [the State] must promptly notify a suspected child abuser that his name is on on the [registry] and provide 'some kind of hearing' by which he can challenge his inclusion." Humphries, 554 F.3d at 1201 (citing Goss v. Lopez, 419 U.S. 565, 578 (1975) and Henry J. Friendly, "Some Kind of Hearing," 123 U. Pa. L. Rev. 1267 (1975)). The post-deprivation process afforded by DFS regarding the CANS notification is sufficient under Humphries. DFS provided notice and an explanation of the appellate procedure for its recommendation for entry into CANS

1    upon its determination of substantiation and again in 2015. Plaintiff has never sought to appeal.
2    Plaintiff was called and asked to sit for a conversation more than two months before the final
3    determination—he declined. The Substantiation Letter was sent by certified mail to the Plaintiff's
4    last known address and notified him of the determination. Second, Plaintiff had three chances to
5    be meaningfully heard, namely an informal opportunity to be heard before the determination, to
6    seek agency appeal, and, failing that a hearing before a neutral official.

7    Plaintiff's argument that he should have been provided by counsel has been directly
8    rejected by the Supreme Court. See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18 (1981). Plaintiff's
9    argument that DFS should have carried out personal service is unavailing. Personal service adds
10   little beyond certified mail and attempts to confirm a mailing address, while dramatically
11   increasing the administrative cost and delaying intervention in potentially dangerous situations.
12   See Matthews, 424 U.S at 335. Plaintiff's choice to rebuff the multiple opportunities to be heard
13   afforded to him are not indicative of a lack of process provided by the government.

14   Indeed, as noted, to date, the Plaintiff has not presented any evidence that he ever even
15   sought to challenge being placed in the CANS databased and was denied the opportunity to appeal
16   or be heard consistent with the procedures outlined in the Substantiation Letter. Thus, Plaintiff has
17   not even established that he is seeking the remedy available to him. See generally Brady, 859 F.2d
18   at 1551 ("This court and the Supreme Court have repeatedly held that the appropriate remedy for
19   deprivation of a liberty and/or property interest without due process is to order the process that
20   was due and any attendant damages which resulted from the failure to give proper procedure.").

21   Even taking the evidence in the light most favorable to Plaintiff, and drawing all inferences
22   in his favor, Gonzalez, 747 F.3d at 793, the Court finds that he has failed to establish deficient due
23   process protections as a matter of law.

   ii.   First Amendment Retaliation Claim Against Arostegui

25   Plaintiff's second remaining claim alleges that Defendant Arostegui, acting in her official
26   capacity, took action to retaliate against him for the filing of his first lawsuit. A plaintiff may bring
27   a Section 1983 claim alleging that public officials, acting in their official capacity, acted with the
28   intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights. Gibson v. United

States, 781 F.2d 1334, 1338 (9th Cir. 1986). To bring a First Amendment retaliation claim, the plaintiff must allege that "(1) [he] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 867 (9th Cir. 2016); Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2007). If the plaintiff establishes the elements of a retaliation claim, "the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct . . . the defendants must show more than that they 'could have' punished the plaintiffs in the absence of the protected speech; instead, 'the burden is on the defendants to show' through evidence that they 'would have' punished the plaintiffs under those circumstances." Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006) (internal quotations and citations omitted).

Here, there is no genuine dispute regarding the first two elements. Both parties agree that Plaintiff's first lawsuit predates the 2012 DFS investigation. There is similarly no dispute that an investigation for child abuse would chill a person of ordinary firmness from continuing to engage in that protected speech. Therefore, the dispute centers on whether the first lawsuit was a "substantial motivating factor" in bringing the 2012 investigation.

Plaintiff argues that the close timing of the first lawsuit and the investigation indicates a reprisal. Plaintiff additionally points to several places in Arostegui's notes that said she was accompanied by a "Stuart." According to Plaintiff this indicates that Arostegui and Georgina Stuart were working side-by-side during the investigation and certainly spoke of his lawsuit.

Defendants argue that the references to "Stuart" was a typographical error and that Georgina Stuart was not on the investigation, nor could she have worked on the investigation based on the administrative structure of DFS. Instead, Defendants point to evidence that a "Debbie" Stewart worked on the investigation. Beyond this, Defendants argue that Arostegui was unaware of the first lawsuit and, regardless, lacked the discretion to reprise against Plaintiff. In short, the substantiated finding would have resulted nonetheless.

The Court agrees with Defendants that Plaintiff has failed to set forth sufficient undisputed or disputed evidence of retaliation or reprisal. Absent other evidence, the close timing between the first lawsuit and the subsequent investigation and substantiation finding of DFS are enough, when viewed in the light most favorable to Plaintiff, to draw an inference of Defendant Arostegui's intent to retaliate against Plaintiff's first lawsuit. Coszalter, 320 F.3d at 977; cf. Pinard, 467 F.3d 755, 770 (9th Cir. 206) ("A plaintiff may establish motive using direct or circumstantial evidence . . . . In cases involving First Amendment retaliation in the employment context, we have held that a plaintiff may rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that the defendant's purported reasons for its conduct are pretextual or false."). However, this does not end the Court's inquiry.

The inference of retaliatory motivation may be rebutted by Defendants submitting evidence that they would have pursued this investigation and substantiated these allegations in the absence of Plaintiff filing the civil rights suit. Pinard, 467 F.3d at 770. Here, Defendants have carried their burden. First, there is no genuine dispute that DFS received a hotline call from a mandatory reporter. See NRS § 432B.220 (mandating certain people who "know or have reasonable cause to believe that a child has been abused or neglected shall . . . make such a report to [DFS]."). Second, there is no genuine dispute that there is no nexus between the DFS individual sued in Plaintiff's first lawsuit—Georgina Stuart—and Arostegui or her supervisor Deborah Croshaw, beyond being employed in separate parts of the same large government entity. Defendants have furnished unrebutted evidence that Arostegui was assigned as the investigator because she was the next investigator in the rotation for assignments and that Georgina Stuart had no part in that process. Defendants have furnished unrebutted evidence that Georgina Stuart and Debbie Stewert are two distinct individuals. There is no evidence in the record that, prior to being assigned to the case, that either Arostegui or her supervisor were aware of Plaintiff's first lawsuit. Finally, there is unrebutted sworn testimony that DFS makes its findings based on standardized definitions and that any reasonable investigator would have based on the evidence uncovered during the investigation, reached the conclusion that the allegation was substantiated. Considered together, no reasonable jury could find that—based on four months of proximity alone—that Defendant Arostegui

substantiated the investigation against Plaintiff in retaliation for his bringing of the first lawsuit.

Therefore, Plaintiff's second claim fails as a matter of law.

### iii. Motion to Transfer Documents

Plaintiff's Motion for Transfer of Documents argues that documents submitted to the Court by Plaintiff's prior attorney (hereinafter "Attorney Eyes' Only Documents") should be remitted to him by the court "so that his discovery responses may be complete." The Court construes this as a motion to modify its prior Protective Order concerning these documents.

"[T]he fruits of pretrial discovery are, in absence of a court order to the contrary, presumptively public." San Jose Mercury News, Inc. v. United States Dist. Ct., 187 F.2d 1096, 1103 (9th Cir. 1999). A Court may restrict the publication of discovery, including to parties, where good cause is shown. Fed. R. Civ. Pro. 26(c); see Phillips v. GMC, 307 F.3d 1206, 1210-22 (9th Cir. 2002) ("For good cause to be exist, the party seeking protection bears the burden of showing specific prejudice of harm will result if no protective order is granted." In this Case, the Court issued a stipulated Protective Order (ECF No. 131) regarding the Attorney Eyes' Only Documents, finding good cause that not issuing the order would prevent specific harms.

A court may, on a showing of good cause, modify a protective order under its inherent powers. Here, the Court, having conducted a thorough review of the documents in question, finds that they should not be remitted to Plaintiff. First, the Attorney Eyes' Only Documents do not contain any material information that Plaintiff does not already have access to at this point. Indeed, Plaintiff has access to redacted versions and his previous counsel had access to unredacted versions. Second, these documents contain personally identifiable information relating to minors and Clark County employees. The Court takes judicial notice of the fact that Plaintiff was declared a "vexatious litigant" during the course of related litigation. See Foley v. Valdes, No. 2:17-cv-02783-GMN-NJK, 2019 U.S. Dist. LEXIS 38220 (D. Nev. March 8, 2019). The Court thus finds that release of these documents could bring harassing litigation or even personal harm.

Given the minimal need for Plaintiff to have access to the Attorney Eyes' Only Documents, coupled with the potential prejudice of their disclosure, the Court declines to modify its previous Protective Order (ECF No. 131). As stated in that Protective Order, it shall remain in full force

and effect following the termination of this action.

V. **CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendants' Motion for Sanctions (ECF No. 196) and Defendant's Motion for Summary Judgement (ECF No. 198) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Transfer of Documents (ECF No. 205) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff pay Defendants' reasonable attorney's fees and costs caused by Plaintiff's failure to respond to the requested discovery. Defendants shall submit a motion for costs and fees (itemized) consistent with this order by **October 20, 2023**.

The Clerk of Court is instructed to enter judgment in favor of Defendants.

The Clerk of Court is instructed to close this case.

DATED: September 29, 2023.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**